197 So.2d 83 (1967)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiffs-Appellees,
v.
CHRIST BAPTIST CHURCH, Defendant-Appellant.
No. 6920.
Court of Appeal of Louisiana, First Circuit.
March 13, 1967.
*84 Daniel C. Wiemann, of Marcel, Wiemann & Byrnes, Houma, for appellant.
Ben C. Norgress, Philip K. Jones, D. Ross Banister and Glenn S. Darsey, Baton Rouge, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
SARTAIN, Judge.
Defendant-landowner, Christ Baptist Church, appeals from a judgment of the district court awarding to it as just compensation for property taken the sum of $16,300.00, the amount originally deposited by plaintiff, State of Louisiana, Through the Department of Highways. The sum of $16,300.00 represents $14,550.00 for the land and improvements and $1,750.00 for the decrease in the value of the remainder of the land, better known as severance damages.
Defendant asked that the sum awarded be increased to the amount of $22,184.00. Plaintiff answered the appeal urging that the amount awarded be decreased by the amount of the severance damages or $1,750.00.
This expropriation suit was filed on May 27, 1960, and involved the widening of Jerry Ann Avenue in connection with the construction of the eastern approach to the tunnel under the Intracoastal Waterway in the City of Houma, Parish of Terrebonne. Defendant's property is located on the eastern side of Jerry Ann Avenue, one block north of Grand Caillou Highway and four blocks south of the canal. The *85 property is situated in that subdivision known as Bergeron-Voisin Addition, where defendant owns four lots in Block Two of said subdivision, each lot measuring sixty feet front on the east side of Jerry Ann Avenue, by a depth between parallel lines of one hundred and fifty feet. These lots are numbered one through four from north to south. The western portions thereof were taken from a point 91.09 feet east of the northwest corner of Lot One to a point 82.62 feet east of the southwest corner of Lot Four, an area comprising 19,248.74 square feet. Defendant also owned Lots Five and Six located immediately to the rear of Lots Four and Three respectively. After the suit was instituted and before trial, defendant purchased Lots Seven and Eight, the remaining lots in the block.
Each litigant called one expert witness and stipulated that if other named witnesses were called said witnesses would testify substantially the same as their respective principle witness. The considerable variance in the amounts offered by plaintiff and the sum prayed for by defendant stems primarily from the difference in the appraisal approach used by the experts.
Plaintiff utilized the approach generally accepted as the most accurate, namely, the use of comparables. State, Through the Dept. of Highways v. Bjorkgren, La. App., 147 So.2d 905; Central La. Electric Co. v. Harang, La.App., 131 So.2d 398; Gulf States Utilities Co. v. Norman, La. App., 183 So.2d 421. The trial judge, undoubtedly, was impressed with the thoroughness and reasonableness of the method used by Mr. Daniel B. Eells, plaintiff's expert. This witness determined that the value of the land taken should be fixed in the sum of $5,398.32. He arrived at this figure by assigning to the property taken a value of .28 cents per square foot. After discarding several sales not considered as comparables, he used five sales in the same subdivision. Sale (1) dated May 29, 1956 of a fractional lot located two and one half blocks north of the subject property for .24 cents per square foot. Sale (2) of the same date of another fractional portion of the same lot for .24 cents per square foot. Sale (3) dated January 1, 1957 of a fractional lot located one block north of subject property for .15½ cents per square foot. Sale (4) of the same date of another fractional portion of the same lot for .15½ cents per square foot. Sale (5) dated November 20, 1958 of Lot Seven and Eight, Block Two, located adjacent to subject property for .22 cents per square foot. He also considered defendant's purchase of Lots One and Two in 1956 at a cost of .15 cents per square foot and defendant's purchase of Lots Three and Four on November 16, 1958, excluding improvements, at the cost of .15 cents per square foot. The witness assigned a value of .28 cents per square foot, which is .04 cents more than the highest comparable used, "because the lots were located in a little better portion of this unrestricted area." Such a conclusion appears reasonable and logical to us. In fairness to the defendant, it must be pointed out that the highest values used as comparables were Sales (1) and (2) above of lots located nearest the sewerage canal and furthermost from defendant's property. Of particular note is the fact that Sale (5) above of Lots Seven and Eight, which adjoined defendant's property on the rear, took place just 18 months before the institution of this litigation and the price thereof was .15 cents per square foot. The witness further explained that he could not ascribe to defendant's property any general appreciation in value resulting from development in the area or demand for property. He noted a lack of general escalation in property values in the area, referring to sales in 1956 at .24 cents and .15 cents, 1957 at.15½ cents, and 1958 at .22 and .15 cents per square foot.
The arithmetic of .28 cents per square foot for the property plus the sum of $8,554.26 for improvements taken aggregate an amount slightly less than $14,550.00 deposited *86 by plaintiff. However, plaintiff concedes to the amount deposited.
Defendant's expert witness was a local banker, who frankly admitted that his appraisal was not made for the purpose of this present litigation but was conducted at the request of defendant's pastor who was interested in determining the approximate value of the church's real estate. His appraisal was made approximately a year and a half prior to the date of the trial. The witness further stated that he did not seek out sales of similar property in the area but chose to rely primarily upon his own personal experience derived primarily from examining property for the bank. He did make a comparison of the piece of property that he purchased for the bank in the general area of defendant's property, but not in the immediate vicinity thereof. He testified that in his opinion the land expropriated by the State was worth $10,000.00. It would serve no useful purpose here to report in detail this witness's testimony. It will suffice to say that in our opinion the trial judge was amply justified and eminently correct in not according to this witness's testimony the weight urged by counsel. We recognize fully that the opinion of experts as to the value of property based upon the said expert's experience in the field of appraisal is a method of determining value and is frequently used in suits of this type. However, it is only used when there are no sales of similarly situated property in the immediate vicinity of the expropriated property that can be used as reasonable comparables.
In cases of this type, much authority is vested in the trial judge in the evaluation and determination of appropriate weight to be accorded each expert witness. The established rule is well settled that the testimony of each expert should be given effect if their testimony appears to be well grounded from the standpoint of sincerity and good reasoning. However, the expert testimony may be disregarded if it impresses the court unfavorably. State, Through Dept. of Highways v. Bourque, La.App., 127 So.2d 784; State, Through Dept. of Highways v. Stoer, 238 La. 718, 116 So.2d 498; Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; Central Louisiana Electric Co. v. Fontenot, 159 So.2d 738; State, Through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35; State, Through Dept. of Highways v. Kemp, 141 So.2d 487; State, Through Dept. of Highways v. Watkins, 155 So.2d 245; and, State, Through Dept. of Highways v. Poche, La.App., 135 So.2d 136. The trial judge is in a better position to make this determination and his decision should not be disturbed unless manifest error is shown. Central Louisiana Electric Co. v. Williams, La.App., 181 So.2d 844; State Through Dept. of Highways v. Crockett, La.App., 134 So.2d 341; and State Dept. of Highways v. Reuter, 175 So.2d 316.
We now turn to the question of severance damages. Plaintiff contends that defendant is not privileged to go into the matter of an increase in severance damages because it did not comply with the express provisions of LSA-R.S. 48:451 which specifically provide that where a portion of a lot is expropriated and defendant seeks a trial to determine just and adequate compensation as to value and the amount of damages to which he is entitled, defendant must in his answer set forth his claims as to value and the amount he claims as damages to the remainder of his property and that his claim for damages be reasonably itemized. Defendant's answer properly sets forth its claim as to value but is completely silent as to any claim for damages. Plaintiff objected when evidence was offered by defendant tending to show additional severance damages. The trial judge admitted this evidence subject to the objection.
Plaintiff also argues that the amount of damages estimated at the time this suit was filed is more than off-set by the *87 increase in value to the remaining lots as a result of the improvements to follow the expropriation and seeks to recover from defendant the amount previously deposited as severance damages. However, plaintiff did not file an amending petition or otherwise notify defendant of its intention to do so. Defendant timely objected to the introduction of any evidence tending to negate severance damages on the grounds that the same would tend to alter, amend or enlarge plaintiff's pleadings. The trial judge also admitted this evidence subject to the objection.
Under these circumstances, several alternatives were open to the trial judge. He could have properly sustained both objections thus excluding the evidence as to off-setting said damages and increasing the same. The right to seek recovery of the amount previously deposited as estimated damages is clearly available to plaintiff. LSA-R.S. 48:456. However, as stated by us in State, Through Dept. of Highways v. Baddock, La.App., 170 So.2d 5, "* * * it is incumbent upon the Department to so notify the defendant by filing an amended pleading setting forth this revised sum * * *." Further, the claim for additional severance damages by defendant is in the nature of an affirmative defense and must be specifically pled and reasonably itemized. LSA-R.S. 48:451. Since neither plaintiff nor defendant followed the above, the trial judge could on application by either one or both of the parties permitted an amendment to their respective pleadings. LSA-CCP Art. 1154; State, Through Dept. of Highways v. Baddock, supra; State, Through Dept. of Highways v. Watkins, La.App., 155 So.2d 245. Lastly inasmuch as plaintiff initiated the dispute as to severance damages by going into the subject matter first and defendant followed by offering its own evidence in seeking an increase, the trial judge could have considered each as having waived their previous objections.
The trial judge determined that the evidence was admissible under LSA-CCP Art. 1154, which reads as follows:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
While we question the applicability of LSA-CCP Art. 1154 under the circumstances of this case, because the evidence was timely objected to and neither party filed written pleadings to properly amend, the evidence itself and the evaluation of that evidence were not prejudicial to the interest of either plaintiff or defendant as the trial judge correctly held that both failed to prove their respective contentions.
Defendant's pastor testified that prior to the instant litigation defendant was using the frame house located on Lots Three and Four for a nursery and Sunday Bible School but that it had plans to construct a permanent church building. He further testified that because of these long range plans for growth and development, it was essential that defendant acquire two additional lots to the rear of Lots One and *88 Two at a cost of $24,000.00. This was accomplished after suit was filed and before trial. The acquisition of these two lots were to assure defendant of owning approximately the same amount of land area after the expropriation as it owned before. The evidence further discloses that after this suit was filed defendant did proceed with the construction of a permanent church auditorium and classroom facility. As of the date of the trial, however, it had not utilized the last two lots purchased but continued to rent the residential structures located thereon.
The trial judge was correct in his disallowance of additional severance damages. While it is readily understandable that a church complex requires land areas sufficient to provide suitable chapel, educational, recreational and parking facilities, the record in this case does not support the conclusion that anything other than defendant's projected plans were disrupted. Ordinarily, compensation for severance damages is to be measured by the difference between the higher market value of the land taken before the expropriation and the lower market value afterwards. McMahon et al. v. St. Louis, A. & T. R. Co., 41 La.Ann. 827, 6 So. 640; American T. & T. Co. of La. v. Maguire, 219 La. 740, 54 So.2d 4; Central La. El. Co. v. Convington & St. Tammany, L. & I. Co., La.App., 131 So.2d 369.
Defendant's criteria for the establishment of higher severance damages here is directed more to its projected operation as a church than it is to the impairment of the value of the land remaining. Our courts have recognized and have awarded damages for the interference with an owner's ingress and egress, State v. Dowling, 205 La. 1061, 18 So.2d 616; the creation of something inherently dangerous on adjacent property, Texas Pipeline Co. v. Barbe, 229 La. 191, 85 So.2d 260; the reduction or diminution of services, State, Through Dept. of Highways v. Caldwell Brothers Real Estate Inc., La.App., 155 So. 2d 231; compensation for loss of lease rights, State v. Ferris, 227 La. 13, 78 So.2d 493. However, severance damages have not been awarded for ordinary business losses, moving the business, loss of anticipated profits while moving and reestablishing the business, Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40. In the instant case, the execution of such plans for expansion rested solely within defendant's discretion and on the date of the filing of this suit were speculative. They had not realized and the expropriation did not take away something that had in fact pre-existed the taking. Further, the purchase price of the two lots acquired cannot be considered as a proper comparable because there were improvements thereon and the record does not disclose any re-adjustment therefor. Lastly, the purchase itself cannot be considered as a transaction between a willing buyer and a willing seller under ordinary circumstances. Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491; State, Through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20. Defendant's pastor admitted that he thought the price was too high. They had previously optioned the property and throughout negotiations the owner unrelentingly stuck to his asking price. However, because of plans for the future, defendant acceded to the price demanded.
Plaintiff seeks to recover the amount of $1,750.00 originally deposited as severance damages. Its witness, Mr. Eells, testified that at the time of his appraisal he assigned damages to the balance of defendant's property slightly in excess of this sum. However, he further testified that at the time of trial the area was beginning to boom, showing a definite increase in property values. Before this suit was filed the land taken was unrestricted and located outside the city limits of Houma. At the time of trial, the area had been annexed by the city and with the exception of Lot One was zoned residential. The comparables used by plaintiff's witness were sales involving commercial lots *89 or by owners of adjacent commercial establishments and clearly not comparable. Such a purchaser "would pay more for the land now * * * looking to the future when it will be rezoned," opined the witness. The trial judge concluded this was too speculative and denied plaintiff's demands, a decision fully supported by the record.
Plaintiff further argues that even if it has failed to show an off-setting increase in the land value sufficient to recover the amount deposited, defendant has failed to show that the $1750.00 deposited is justified and for this reason plaintiff is entitled to recover. Plaintiff cites numerous cases supporting the rule that the burden of proving damages is on the defendant. The cases cited and the rule announced therein are controlling here insofar as defendant's demand for an increased award is concerned. They are not apposite as to plaintiff's contention for a reduction in damages for such contention is predicated on the fact that the amount was determined by plaintiff's instead of defendant's witness. It was not manifest error on the trial judge's part to consider plaintiff's witness's testimony to the effect that the balance of defendant's property was damaged to an amount of 45 per cent of its original value, notwithstanding the fact that said judge also concluded that defendant was not entitled to an increase.
The trial judge affirmed the amount of $1750.00 originally deposited as severance damages not because defendant had proved the amount was adequate but because plaintiff had failed to prove that it was entitled to a refund.
LSA-R.S. 48:442 requires the Department of Highways to annex to its petition, inter alia, "[a] statement of the amount of money estimated to be just and adequate compensation for the taking, showing any estimate of damages as a separate item." It does not require that the landowner subsequently prove the justification of such values. If the Department of Highways seeks to recover the amount under LSA-R.S. 48:456, it has a burden of proof corresponding to that of the owner seeking an increase to fully show the cause for any dimunition in damages. See State, Thorugh Dept. of Highways v. Baddock, supra.
For the reasons assigned herein, the judgment of the lower court is affirmed; defendant to pay all costs of this appeal and of these proceedings.
Affirmed.