PETERS, Judge ad hoc.
This is a suit brought by the Department of Highways to expropriate 25.47 acres of defendant’s land in St. Martin Parish. The Department deposited $21,512.00 in the Registry of the ' Court as compensation. Defendant withdrew this sum with reservation of rights and filed an answer and reconventional demand seeking an increase in compensation, both for the land taken and for severance damages sustained by his remaining land.
Prior to the taking defendant’s tract of land was four-sided and regular in shape. It actually consisted of two parcels because it was bisected by La. 328, a blacktop road running in a north-south direction. Before the taking, the parcel on the east side of La. 328 contained 59.724 acres while that on the west side contained 49.496 acres. Each parcel had a frontage of approximately 600 feet on La. 328. All the frontage on La. 328 was taken, with 17.233 acres being taken from the east side and 6.937 acres being taken from the west side. The land was taken to be used for the construction of an interchange on Interstate 10. To make defendant’s remaining land accessible to La. 328, the Department constructed service roads which connect both parcels to La. 328. The remaining parcels now have more frontage on the service roads than the original parcels had on La. 328.
The trial court denied the claim for severance damages but increased the award for the land taken to $22,134.00. Defendant appealed and now asks, first, that the award for the land taken be increased, and, second, that severance damages be awarded in the amount of $10,500.00.
*629 We first consider the defendant’s contention that the award for the property-taken should be increased. Defendant presented the testimony of two appraisers who did a joint appraisal of the property and found the value of the land taken (exclusive of improvements) to be $27,138.00. The improvements were appraised at between $2,440.00 and $2,800.00, so defendant’s evidence indicates that adequate compensation would be nearly $30,000.00. Defendant’s appraisers were both active in the real estate business in St. Martin Parish and were familiar with real estate values in the area where defendant’s land was located. The Department’s appraisers fixed the value of the land taken at between $20,994.00 and $21,512.00. The Department’s appraisers had no experience in the development of property in the area. Defendant argues that, because his appraisers were familiar with the locality and the Department’s appraisers were not, the •trial court erred in accepting the valuation given by the Department’s appraisers rather than that offered by defendant’s appraisers.
We cannot accept this argument. It is certainly true that an appraiser’s familiarity with the locality is a factor to be considered by the trial judge in weighing the testimony of an appraiser. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). However, there are many other factors to-be considered as well and the trial judge need not accept the opinion of the appraiser who is familiar with the locality if, on the whole, he finds the testimony of other appraisers to be more credible. His decision will not be overturned unless it is manifestly erroneous. We find no manifest error in the decision of the trial judge regarding the value of the land taken.
We turn now to defendant’s contention that severance damages were improperly denied. Before the taking, defendant was using both parcels of land for farming. At that time, the two parcels were regular in shape and were separated only by La. 328, which made the parcels readily accessible to one another. After the taking, the remaining parcels were more irregular in shape and were accessible to one another only by way of the service road, which made the traveling distance between the two parcels approximately 1500 feet.' All appraisers for both parties agreed that before the taking that part of defendant’s land which fronted on La. 328, to a depth of between 200 and 400 feet, had a highest and best use as property for rural home-sites, while the rear land had a highest and best use as agricultural land. It was the opinion of defendant’s appraisers that defendant’s remaining land ■ maintained a highest and best use as agricultural land even after the takings and after the construction of the I — 10 interchange. As agricultural land they believed its market value had been diminished by $10,500.00.
The Department’s appraisers were of the opinion that defendant’s remaining land suffered no severance damage. One appraiser, Mr. Tiger, felt that no severance damage was caused by the taking because the remaining property actually had more frontage after the taking than before. The other appraiser, Mr. Fleming, felt that the parts of the remaining parcels which were given frontages on the service roads actually changed their highest and best use from agricultural use to use for rural homesites or small businesses. It was his opinion this front land actually increased in value due to the taking.
The trial judge accepted the opinion of Mr. Fleming. In his reasons for judgment, the trial judge said the remainder land that now fronted on the service roads was most suitable for small rural estates, second homes, or shopping centers. This was due to the fact that it was now front land rather than rear land and would be located near a highway interchange and also would be readily accessible to the City of Lafayette when I — 10 was completed. The trial judge pointed out that Mr. Fleming valued *630 the remainder at over $1,000.00 per acre based on what the construction of other I-10 interchanges had done to the values of land around those interchanges.
Defendant argues that the Department’s evidence of enhancement in value was' purely speculative and therefore such enhancement could not be considered in mitigation of severance damages. State, Department of Highways v. McPherson, supra. In McPherson, the Supreme Court held that the value of the remainder must be considered as of date of trial and an increase in value that might occur in the future could not be used to mitigate severance damages. The McPherson case is distinguishable factually from the instant case. In McPherson, the evidence showed the remainder had not increased in value as of the time of trial; the increase would come when the highway construction was completed and traffic began to flow. In the instant case, Mr. Fleming testified that the market value of the remaining land had increased at the time of trial due to the completion of the service roads and the on-going construction of the interchange. Even though the highway and the interchange had not been completed at the time of trial, the probability that they would eventually be completed had raised the market value of defendant’s remaining land. This enhancement was not speculative because it had already occurred by the time of trial. While it was possible at the time of trial that I — 10 or the interchange would not be completed, speculators were willing to pay a premium price with the expectation that the land would be near an I — 10 interchange. The expectation that the remainder would be located conveniently near the interchange had increased its market value by the time of trial.
Defendant next contends that, even assuming the enhancement in value was not speculative, such enhancement was the result of general benefits and could not be considered in computing severance damages. He argues that such enhancement in value is a benefit to accrue to all land in close proximity to the proposed interchange and not this remaining land in particular. The flaw in this argument is that defendant’s remaining land would not have gained in value had the Department not built the service roads on which the remaining parcels now front. These remainders have been benefited by the construction of these service roads. Before the taking, the land which now remains was rear use land with no front on any road or highway. Its highest and best use would have continued to be agricultural, with no increase in value, had the service roads not been built. It was the construction of the service roads, combined with the effects of the proposed interchange, which gave the remaining land its increased value. The benefit caused by the construction of the service road was a special benefit.
In Louisiana Highway Commission v. Gray, 197 La. 942, 2 So.2d 654 (1941), our Supreme Court said:
“If, as a result of constructing new work, the remaining land or part of it is left fronting on a road or street, and the land fronting the road or street is more desirable and more valuable because of the frontage, the advantage thus gained is a special or peculiar benefit, and damages to the remaining property may be offset by such benefits.”
This court in later cases applied this rule in holding that the benefit in such a situation is special even if the property of all other property owners with frontage along the route is similarly increased in value. State, Department of Highways v. William T. Burton Industries, Inc., (La.App. 3rd Cir., 1969), 219 So.2d 837; State, Department of Highways v. Miller (La.App. 3rd Cir., 1966), 182 So.2d 155. Thus, defendant’s remaining land was specially benefited by the construction of the service roads and these benefits were properly considered by the trial court in computing sever- *631 anee damages. We find that the trial court correctly denied severance damages.
For the reasons assigned, the judgment of the lower court is affirmed. All costs of this appeal are assessed against defendant-appellant.
Affirmed.